**PEVETO et al. v. TEXAS & N. O. RY. CO.**
**(No. 290-3548.) \***

(Commission of Appeals of Texas. Section B.
March 22, 1922.)

**Trial ⚖═215—Requested charge as to elements of contributory negligence is improper in case submitted on special issues.**

In an action for death at a railroad crossing which was submitted on special interrogatories, a special charge, requested by defendant, that if the jury believed decedent approached the crossing without looking or listening, and that if he had looked or listened he could have seen or heard the train, and that a man of ordinary prudence would have looked and listened, they should answer the interrogatories as to contributory negligence in the affirmative, was properly refused.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by Pearl Peveto and others against the Texas & New Orleans Railway Company. Judgment for the plaintiffs was reversed by the Court of Civil Appeals (224 S. W. 552), and plaintiffs bring error. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed.

Holland & Holland, of Orange, for plaintiffs in error.

Orgain, Butler & Bolinger and F. J. & C. T. Duff, all of Beaumont, for defendant in error.

POWELL, J. About 8 o'clock on the morning of October 1, 1917, Herbert Peveto and Claude Harrington were leaving Orange, Tex., in a Ford car. They drove out Park street, and, when crossing the main line track of the Texas & New Orleans Railroad Company intersecting said street, their automobile was struck by the locomotive of a west-bound passenger train of the railroad company aforesaid, and both men killed almost instantly. Shortly thereafter the widow of Peveto, for herself and as next friend for her minor son, brought this action for damages in the district court of Orange county, alleging that the death of her husband was due to the negligence of the railroad company in the following particulars, to wit:

(1) The failure of the train to blow any whistle or ring any bell of the locomotive in approaching said crossing.

(2) The failure of the agents, servants, and employees of said defendant in the operation of said train to keep a proper lookout for persons traveling said street, or about to cross said railroad crossing.

(3) The failure to provide any means of warning to travelers using said street, such as gates, bells, or flagman.

(4) That the train was running at an excessive rate of speed and at a rate of speed prohibited by the city ordinance of the city of Orange, which ordinance prohibited the running of trains at more than six miles an hour.

S. H. Peveto and Azalie Peveto, surviving father and mother, respectively, of the deceased, also joined as parties plaintiff in the court below. Plaintiffs laid their damages in the sum of $40,000. The railroad company answered by general demurrer, several special exceptions, general denial and plea of contributory negligence upon the part of deceased. A trial was had before a jury, and the court submitted the case upon special issues. The issues submitted by the court, with the jury's answers thereto, were as follows:

"Question No. 1: Do you believe from the evidence that the train that struck the deceased, Herbert Peveto, in approaching the crossing at the time he was struck, gave any signal by the blowing of a whistle or the ringing of a bell? You will answer this question Yes or No." The jury answered, "No."

"Question No. 2: Do you believe that the train that struck the deceased, Herbert Peveto, at the time it struck him, was running at an excessive rate of speed? You will answer this question Yes or No." The jury answered, "Yes."

"Question No. 3: What was the rate of speed the train that struck Herbert Peveto was traveling at the time it struck him? Answer this question by stating in writing the number of miles per hour." The jury answered, "Thirty miles per hour."

"Question No. 4: Do you believe from the evidence that the defendant, Texas & New Orleans Railroad Company, at the time of the injury causing the death of Herbert Peveto, maintained at its crossing on Park street any gates, bells, or flagmen to warn travelers of approaching trains? Answer this question Yes or No." The jury answered, "No."

"Question No. 5: Do you believe from the evidence that the failure of the defendant to give any signal of the approaching train by ringing the bell or blowing the whistle, or to maintain at its crossing at Park street any gates, bells, or flagman, or running the train at an excessive rate of speed, was the proximate cause of the death of Herbert Peveto. Answer this question Yes or No." The jury answered, "Yes."

"Question No. 6: Do you believe from the evidence that the deceased, Herbert Peveto, did any act, or failed to do any act, that contributed to the injury causing his death? You will answer this question Yes or No." The jury answered, "No."

"Question No. 7: Did any act or omission of the deceased, Herbert Peveto, which preceded the injury that resulted in his death, amount to negligence on his part, as that term has been defined to you in this charge? Answer this question Yes or No." The jury answered, ———.

"Question No. 8: Do you believe from the evidence that such act or omission on the part of the said Herbert Peveto was the proximate

---

⚖═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
\*Rehearing denied May 17, 1922.

cause of the injuries received by him? Answer Yes or No." The jury answered, ———.

"Question No. 9: What sum of money in your judgment, if paid now, would reasonably compensate the plaintiffs for the injuries sustained because of the death of said Herbert Peveto? You will answer this question by stating the amount in figures." The jury answered, "$24,500.00."

"Question No. 10: Of the amount found by you, what amount do you apportion to the plaintiff Pearl Peveto? What amount do you apportion to S. H. Peveto? What amount do you apportion to Azalie Peveto? What amount do you apportion to Herbert Thomas Peveto? To question No. 10, we answer:

| | |
|---|---|
| To Pearl Peveto | $ 7,500 00 |
| To S. H. Peveto | 1,000 00 |
| To Azalie Peveto | 1,000 00 |
| To Herbert Thomas Peveto | 15,000 00 |

The court had properly instructed the jury not to answer certain questions in case certain answers had theretofore been given to former questions. Those instructions were correct, and account for certain of the questions remaining unanswered by the jury.

Judgment was entered upon the answers of the jury in conformity therewith. The railroad company duly perfected its appeal therefrom by writ of error to the Court of Civil Appeals at Beaumont, where the judgment of the trial court was reversed and remanded because of its failure to give one special charge requested by the company, and which will be hereafter discussed. See 224 S. W. 552.

The Pevetos filed a motion for rehearing in the Court of Civil Appeals. Upon the overruling thereof, in due course, they filed petition for writ of error, which was granted by the Supreme Court.

The trial court, in its charge, gave certain explanatory instructions, including a definition of "negligence" and "proximate cause." The special charge, the refusal of which by the trial court caused a reversal of its judgment by the Court of Civil Appeals, reads as follows:

"You are instructed that if you believe from the evidence that said Herbert Peveto approached said crossing on the occasion of his death without looking or listening for the approach of a train, and you further believe from the evidence that by looking or listening he would have seen or heard said train in time to have prevented his injury and death, and you further believe that a man of ordinary prudence would, under the same or similar circumstances, have looked and listened for the approach of a train, then you are instructed to answer questions Nos. 6, 7, and 8, 'Yes,' and this would be true even though you may believe from the evidence that there were no whistles or other signals given to announce the approach of the train, and that the train was being operated in a negligent manner."

We think the trial court properly refused to submit said special charge to the jury. The court submitted the case upon special issues. Instead of requesting the court to submit, in the usual way, the facts which affected its defense, the company undertook to group its facts and special charges and so submit them as to obtain a general verdict from the jury. That it cannot do. We had this very charge under consideration in the case of Railway Co. v. Harrington, and on pages 190 and 191 of 235 S. W. will be found a full discussion of our reasons for holding this charge improper in a special issue case. We do not see that any useful purpose could be subserved by repeating that discussion here. Therefore we merely refer to it in this connection. It follows from what has been said that we think the Court of Civil Appeals erred in reversing this cause because of the refusal of the trial court to give the special charge in question. We think it was properly refused by the trial court.

The special charge in question is attacked in various other respects by counsel for plaintiffs in error in their application for writ of error. For instance, it is contended that the charge is erroneous in ignoring the issue of proximate cause, and would be improper even in a case submitted to the jury on a general charge. As we see it, the decision of the case at bar does not require any discussion of this, or other contentions, by us. What we have already said convinces us that, in the instant case, submitted upon special issues, the charge in question was, in any event, properly refused by the trial court, and that its judgment should not have been reversed because of the refusal thereof.

As before indicated herein, this is a companion case to that of Railway Co. v. Harrington, 209 S. W. 689. The Court of Civil Appeals and counsel for all parties in the instant case admit that these cases involve substantially the same facts, and that the decision of the Supreme Court in the Harrington Case, if correct, is controlling here. In fact, as already shown, Peveto and Harrington were riding together in the auto and both killed at the same moment.

The Harrington Case was referred to our section of the Commission of Appeals. In our opinion, we held that this identical charge was improper in a special issue case. We held, further, that its refusal by the trial court in such a case was not ground for reversal of the latter's judgment. The Supreme Court adopted the judgment we recommended in the Harrington Case. See 235 S. W. 188. The railway company in that case filed no motion for rehearing after last-mentioned judgment had been entered, and that judgment is now final. Nor, does the company cite any additional authorities in the instant case.

The Court of Civil Appeals overruled all other assignments of error presented by the railway company. We think they did so correctly.

Most of the other assignments of error by the railway company before the Court of Civil Appeals, in various ways, make the contention that Peveto was guilty of contributory negligence, as a matter of law, because he did not look and listen for the approaching train. The Court of Civil Appeals discussed these matters at some length. We gave our views in this connection in considerable detail in our opinion in the Harrington Case, 235 S. W. 188. We do not think it necessary to say anything here, except that we think these assignments are without merit.

Therefore we recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.