## NATIONAL SURETY CO. v. ROGERS.*
### (No. 1528.)

(Court of Civil Appeals of Texas. El Paso.
Nov. 1, 1923. Rehearing Denied
Jan. 3, 1924.)

**1. Evidence ⊸244(7) — Statement by agent held admissible against principal.**

Statements of agent, in charge of work for surety company, as to claims of subcontractor, *held* admissible against surety company.

**2. Trial ⊸215—Requested general charges properly refused, where case submitted on special issues.**

Requested charges, general in nature, are properly refused, where the case is submitted upon special issues, to which the requested charges are inapplicable.

**3. Trial ⊸350(2)—Refusal to submit merely evidentiary issue held not error.**

Where answer either way, on a requested issue, would have been noncontrolling on the issues of liability raised by the pleadings and evidence, it was proper to refuse to submit such issue; it being merely evidentiary.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Action by O. W. Rogers against the National Surety Company and another. Judgment for plaintiff, and the named defendant appeals. Affirmed.

Jones, Jones, Hardie & Grambling, of El Paso, for appellant.

Davis, Jackson & Fryer and John F. Weeks, all of El Paso, for appellee.

HIGGINS, J. This suit was brought by Rogers against Dan La Roe, and the National Surety Company, to recover the sums of $3,125.04, $878.50, and $4,510. He obtained judgment for the first two sums, and the surety company appeals.

The material facts are as follows:

In October, 1920, La Roe entered into a contract with the United States authorities to build about 10 miles of highway in Arizona, and gave bond for the performance of the contract with the appellant as surety. One of the conditions of the bond was that La Roe would pay all persons furnishing labor or material in the construction of the highway. The appellee worked as a subcontractor upon this highway, and at the time of its completion claimed a balance due in said sum of $3,125.04.

At the same time La Roe had contracts with the state of New Mexico for the construction of certain highways in that state; one being known as the Artesia-Hope road, project No. 29. For the performance of these contracts La Roe gave bonds with ap-

pellant as surety. These bonds did not protect subcontractors.

At the time the Arizona work was completed, the New Mexico work was still in progress, and according to the contention of Rogers it was agreed between himself and La Roe that the latter might use in the completion of the New Mexico contracts the said sum of $3,125.04; the same to be paid upon the completion of the New Mexico work. Rogers then moved onto the Artesia-Hope job and performed services for La Roe, for which he claims an unpaid balance in said sum of $878.50.

La Roe had in his employ A. O. Peabody, who was his general agent in charge of the road building operations.

While engaged upon the New Mexico contracts, La Roe became financially involved and unable to complete same. Thereupon the New Mexico authorities called the surety company, through its agent, E. L. Early, to perform the obligation of its bonds in connection with the New Mexico contracts. Thereupon Early went to Silver City, N. M., and conferred with Peabody and La Roe. Those three then went together to Santa Fé, N. M., and conferred with the New Mexico authorities, and as a result of this latter conference La Roe executed and delivered to the state highway commission an instrument, in substance, as follows:

Reciting the contracts existing between the state of New Mexico, by its state highway department, for the construction and completion of certain road contracts and that on November 2, 1921, the state highway engineer, as executive officer of the commission, had notified La Roe it would be necessary to take over the contracts and have the bonding company complete same, and that on November 9, 1921, La Roe had acknowledged his inability to complete the contracts. That the same required 10 days' notice to La Roe before it could take over the contracts; therefore, it was agreed that La Roe should and did waive the 10 days' notice and authorized the highway engineer to take over his equipment and use the same for the completion of the contracts, and that nothing in the agreement should affect the rights of the state highway commission under the original contracts, bonds, etc., except as above indicated. Thereupon a written agreement was entered into between the state highway commission, the surety company, and A. O. Peabody, reciting all of the facts, and that it was to the mutual benefit of the parties to that agreement that the road contracts should be carried to completion under the existing organization, wherefore it was agreed that La Roe was in default, that Peabody should be substituted for him as a contractor under the original

---

contract, and that Peabody should carry out the same to completion, and that current estimates and all estimates theretofore and thereafter accruing should be used in the payment of the legitimate debts and expenses accrued and to accrue in the completion of the contracts. It was further agreed that Peabody was to receive $500 per month for his services, together with 50 per cent. of the net profits, if any, and the remaining 50 per cent. to be paid to La Roe, and the moneys earned on the contract to be disbursed on voucher checks signed by the three parties to the agreement.

It is shown by the evidence that La Roe turned over his entire outfit, equipment, and supplies to Peabody, valued at about $250,000, and same was used in the completion of the contracts. There also became available and was used by Peabody $44,250.58, due upon current estimates for work already done, and retained estimates in the sum of $38,109.57 for work theretofore done, all of which was subsequently used by Peabody and paid upon checks signed by him, a representative of appellant, and the representative of the highway authorities of New Mexico.

According to the testimony of La Roe, at the conference held in Silver City with the representative of appellant, Early, the latter told him the surety company would have to take over the work; that it was subsequently agreed between himself and Early that, if La Roe would execute the waiver above quoted and turn over his outfit, equipment, and supplies, the surety company would complete the contracts, and pay the debts owing by La Roe; that it was in pursuance of this agreement that he executed the waiver and turned over his outfit, etc.

There is also evidence that, prior to the expiration of the time within which Rogers might have sued appellant upon its bond to recover the money earned upon the Arizona contract, the agent of appellant agreed to pay same if Rogers would wait until the completion of the New Mexico work.

The plaintiff sought to recover the said sums of $3,125.04 and $878.50 upon the alleged agreements above( stated of appellant's agent, Early.

The findings of the jury were adverse to appellee as to the item of $4,510, and this feature of the case need not be noticed. Upon the issues arising as to the other items, the questions submitted and answers are as follows:

"Question No. 1: Do you find that after November 10, 1921, A. O. Peabody was carrying on the work of completing the New Mexico contracts, described in plaintiff's petition, as the agent of the defendant National Surety Company, by the authority and consent of such defendant? Answer 'Yes' or 'No.' Answer: Yes.

"Question No. 2: Do you find that on the 7th day of November, 1921, the defendant Dan La Roe was indebted to the plaintiff for the items, described in plaintiff's petition, aggregating $878.50, or a part thereof? Answer 'Yes' or 'No.' . Answer: Yes.

"If you answer 'Yes' to the preceding question, then answer:

"Question No. 3: . How much of such amount, if any, was Dan La Roe then indebted to plaintiff Rogers on said items? Answer: $878.50.

"Question No. 4: Do you find that the defendant, National Surety Company, agreed with Dan La Roe that if he would waive the 10 days' notice provided for in his contract, turn over to it his outfit, together with his materials and supplies on hand, and together with the 15 per cent. earned by said La Roe but retained by the state of New Mexico, and together with his certain unpaid estimates, that it would complete said work according to said contracts, and would pay all that said La Roe owed for road work, including $3,125.04 and $878.50, and that said La Roe accepted said proposal made to him by said National Surety Company of New York, and did waive said notice and did turn over to said defendant surety company all of his outfit, together with his materials and supplies on hand, and together with the 15 per cent. earned by said La Roe, but retained by the state of New Mexico, and together with his certain unpaid estimates? Answer: Yes.

"Question No. 5: Do you find that the defendant, National Surety Company of New York promised plaintiff, through his attorney, prior to May, 1922, at Phœnix, Ariz., that it would pay plaintiff's claim herein for $3,125.04? Answer: Yes.

"Question No. 6: Do you find that the plaintiff relied upon such promise, if any, and on account of such promise, if any, refrained from instituting suit against defendant National Surety Company for the amount of $3,125.04? Answer: Yes."

"National Surety Company's Special Issue No. 4: Do you find from the evidence in this case that at the completion of the Arizona work by O. W. Rogers for Dan La Roe, O. W. Rogers had a balance due him on said work of $3,125.04? Answer 'Yes' or 'No.' Answer: Yes."

## Opinion.

It is objected that the fourth finding should be set aside because contrary to the overwhelming weight of the evidence, and that issues 5 and 6 should not have been submitted because not raised by the pleading or evidence.

It will serve no useful purpose to detail the allegations of the lengthy petition and quote from the voluminous statement of facts. It is sufficient to say these objections are not well taken.

[1] Error is also assigned to the admission in evidence of statements oral and written made by Peabody, showing the correctness, of the amount claimed by Rogers to be due him upon the Arizona work. The jury has found, and the evidence supports the finding, that after November 10, 1921, Pea-

body was acting as the agent of appellant in completing the work upon the New Mexico contracts, and it is evident that he was the agent employed by appellant in carrying out the agreement which it had made with La Roe. The statements so made were within the scope of his agency and admissible against his principal for the purpose of showing the amount due Rogers for work done upon the Arizona project.

Other rulings upon evidence are complained of, none of which present any error of a reversible nature. It may be that some of the evidence may have been inadmissible, but upon consideration of the entire record we are satisfied that it could have had no controlling influence upon the findings made upon the material issues in the case and the error, if any, harmless.

[2] Error is also assigned to the refusal of certain charges, Nos. 2, 5, and 6, requested by appellant. They were general in their nature and properly refused, because the case was submitted upon special issues, and such charges are inapplicable under the special issue statute. Railway v. Harrington, (Tex. Com. App.) 235 S. W. 188; Peveto v. Ry. Co. (Tex. Com. App.) 238 S. W. 892; Railway v. Amason (Tex. Civ. App.) 239 S. W. 359.

In addition to this, Nos. 2 and 5 were objectionable as upon the weight of the evidence, and No. 6 had no bearing upon the controlling issues in the case and would have been confusing to the jury.

[3] Complaint is made of the refusal of requested issue No. 1, as follows:

"Gentlemen of the jury, do you find from the evidence introduced in this case that at the time of the execution of the contract of November 10, 1921, between A. O. Peabody, the National Surety Company, and the state highway commission of New Mexico that there was any agreement or understanding between said parties to said written contract with reference to the completion of the La Roe contract other than as mentioned in said written contract?"

At most this issue was merely evidentiary. The controlling questions in the case were well submitted by the court. An answer either way, to the requested issue, would have been noncontrolling upon the issues of liability raised by the pleadings and evidence of appellee. The highway commission may have been ignorant of and in no manner party to appellant's agreement with La Roe, but that would not have affected the rights of Rogers under such agreement. The refusal of the issue therefore presents no error.

Other assignments complain of argument to the jury by counsel, none of which presents any reversible error.

Affirmed.

On Rehearing.

Appellant's counsel has filed an able motion for rehearing. After careful consideration we adhere to the view that the proper disposition of the appeal has been made and the conclusions correct which are set forth in the opinion as the basis of the affirmance.

It is pointed out in the motion that the opinion did not pass upon the objection to the submission of question 1, which was submitted under proposition No. 6, to the effect that it should not have been submitted because not raised by the pleadings and evidence, but, in our opinion, this objection is not well taken. The failure to pass upon the question in the main opinion was inadvertent.

Having reached the conclusion that the proper disposition of the appeal has been made, the motion is overruled.